## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| RUSSELL HOFF, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>POPULAR INC., et al.<br><br>Defendants. | :<br>:<br>: Civil Action No. 3:09-cv-01428-GAG<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## UNDERWRITER DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS SECURITIES ACT CLAIMS

Defendants UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Inc. and Citigroup Global Markets, Inc. (collectively, the "Underwriter Defendants") hereby move to dismiss Counts Three and Four of the Consolidated Class Action Complaint (the "Complaint").

## INTRODUCTION

Plaintiffs assert two claims against the Underwriter Defendants: (1) a claim under Section 11 of the Securities Act of 1933 (the "Securities Act") (Count 3), and (2) a claim under Section 12(a)(2) of the Securities Act (Count 4) based on the Underwriter Defendants' role in Popular, Inc.'s May 22, 2008 offering of 16,000,000 shares of its 8.25% Non-Cumulative Monthly Income Preferred Stock, Series B (the "Series B Offering"). (*See* Compl. ¶¶ 316-40.)

Counts 3 and 4 suffer from numerous fatal deficiencies that require dismissal with prejudice. Four of those deficiencies are set forth comprehensively in the motion papers submitted today by Popular, Inc. and Individual Defendants (Dkt. Nos. 116 and 117) (the "Joint Memorandum") and PricewaterhouseCoopers LLP (Dkt. Nos. 119 and 120) (the "PWC Memorandum"). To avoid repetitive filings, the Underwriter Defendants hereby join and

incorporate by reference the arguments in those motion papers.  A very brief summary of those arguments, as applicable to the Underwriter Defendants, is set forth in Section II of this Motion.

In addition to the grounds discussed in the Joint Memorandum and PWC Memorandum, Counts 3 and 4 should also be dismissed against the Underwriter Defendants because the purported misrepresentation was contained in a section of the Offering Documents reviewed and approved by Popular, Inc.'s expert accountants and auditors.  As explained in Section III below, the Securities Act specifically exempts the Underwriter Defendants from liability for any "expertised" portions of the Offering Documents, because it would be absurd to require underwriters, who are not expert accountants or auditors, to detect and correct alleged accounting errors, absent red flags, in circumstances where company management and auditors have applied complex accounting rules to a company's financial statements.

## DISCUSSION

The Complaint in this case is broadly drafted and includes 12 defendants, violations of both the Securities Act and the Exchange Act of 1934, and alleged misrepresentations and/or omissions over a 13-month period in numerous public filings and statements.  The Complaint as it relates to the Underwriter Defendants, however, is quite narrow.  The two claims against the Underwriter Defendants both arise out of a single offering of securities in May 2008.  (Compl. ¶¶ 277-99; 313-15.)  And these two claims are predicated entirely on a single allegation – the Offering Documents issued in connection with the Series B Offering were misleading because they incorporated by reference Popular, Inc.'s financial statements, which allegedly accounted for Popular, Inc.'s deferred tax asset in a manner inconsistent with Generally Accepted Accounting Principles ("GAAP").  (*See* Compl. ¶¶ 286-97.)  As discussed below, this allegation cannot support Securities Act claims against the Underwriter Defendants.

2

I.    **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of any complaint that does not contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must set forth factual allegations that demonstrate a "right to relief above the speculative level." *Id.* at 555. The First Circuit, in applying the *Twombly* standard, has explained that the Supreme Court altered the "Rule 12(b)(6) standard in a manner which gives it more heft. In order to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *ACA Fin. Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (quoting *Twombly*, 550 U.S. at 558). Thus, courts should dismiss a complaint where the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

II.    **COUNTS THREE AND FOUR SHOULD BE DISMISSED AS AGAINST THE UNDERWRITER DEFENDANTS FOR THE REASONS SET FORTH IN THE JOINT MEMORANDUM AND THE PWC MEMORANDUM**

The Section 11 and Section 12(a)(2) claims against the Underwriter Defendants should be dismissed with prejudice for four independent reasons, each of which is set forth more fully in the Joint Memorandum and the PWC Memorandum.

    A.    **Plaintiffs Fail to Plead a Material Misstatement or Omission in the Offering Documents**

To state a claim under Section 11 or 12(a)(2) of the Securities Act, a plaintiff must demonstrate that the registration statement (Section 11) or prospectus (Section 12(a)(2)) contained "an untrue statement of a material fact" or omitted "to state a material fact" that would be necessary to make the statements not misleading. 15 U.S.C. §§ 77k, 77l(a)(2). As discussed in Sections I(A), I(B), and III of the Joint Memorandum and Section II of the PWC

Memorandum, plaintiffs' complaint fails to plead particularized facts showing that any of the Offering Documents related to the Series B Offering were actually false or misleading. On this basis alone, the claims against the Underwriter Defendants should be dismissed.

**B.    The Alleged Misstatements Are Forward-Looking**

As explained in the Joint Memorandum in Sections I(D) and III, the Securities Act claims must also be dismissed because the alleged misstatements contained in the May 2008 Offering Materials qualify as "forward-looking" statements that, under the Private Securities Litigation Reform Act (the "PSLRA"), cannot form the basis for liability under Section 11 or 12(a)(2) of the Securities Act.  15 U.S.C. § 77z-2(c)(1)(B) (forward-looking statements accompanied by cautionary language fall within the Securities Act safe harbor provision unless defendant had "actual knowledge . . . that the statement was false or misleading").

**C.    The Alleged Misstatements Did Not Cause Plaintiffs' Losses**

A loss causation defense "can be considered on a motion to dismiss to the extent it is claimed that the lack of loss causation is apparent on the face of the complaint." *In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 347-48 (S.D.N.Y. 2006); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1171 (C.D. Cal. 2008) ("The face of a complaint can provide a complete causation defense where the vast majority of a security's decline cannot be attributed to an alleged corrective disclosure."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 253 (S.D.N.Y. 2003) ("Where it is apparent from the face of the complaint that the plaintiff cannot recover her alleged losses, dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) is proper.").

As discussed in Section I(C) and III of the Joint Memorandum, plaintiffs must, but fail to, plead facts showing that the revelation of the alleged fraud caused a decline in the price of the

4

shares sold in the May 2008 Series B Offering, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), or to plead in a manner that "allow[s] a factfinder to ascribe some rough proportion of the whole loss to [the company's] misstatements," *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007); *see also WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2005 WL 375314, at *6 (S.D.N.Y. Feb. 17, 2005) ("[T]he negative causation defense in Section 11 and the loss causation element in Section 10(b) are mirror images.").

Indeed, although plaintiffs contend that the fraud was revealed on January 22, 2009 (Compl. ¶ 11), they cite to *no* concurrent drop in the price of the Series B shares. The closest they can come is a decline on February 19, 2009, nearly a month later. *Id.* These allegations are insufficient as a matter of law to demonstrate the requisite casual connection between the revelation of fraud and plaintiffs' losses. *See, e.g., Collier v. Aksys Ltd.*, No. 04-cv-1232, 2005 U.S. Dist. LEXIS 20300, *44-45 (D. Conn. Aug. 15, 2005) (dismissing complaint based on failure to plead loss causation because loss was "too removed in time to be causally linked to the material omissions and misstatements"). Because a loss causation defense to the Securities Act claims is apparent from the Complaint, plaintiffs' Securities Act claims should be dismissed.

**D.    Plaintiffs' Claims Against the Underwriter Defendants are Time-Barred**

Section 13 of the Securities Act provides that "[n]o action shall be maintained to enforce any liability created under [Section 11 or Section 12(a)(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. As demonstrated in Section II of the PWC Memorandum, plaintiffs had all of the information required for a Section 11 or 12(a)(2) claim as soon as the last of the offering documents was filed in May 2008 – a fact underscored by plaintiffs' own allegation that an analyst at Sterne Agee raised questions about

5

the deferred tax asset "as early as June 13, 2008." (Compl. ¶ 243.) Because plaintiffs did not

sue the Underwriter Defendants (or PWC) until October 19, 2009 – roughly seventeen months

later – their claims against the Underwriter Defendants are time-barred.

## III.   THE RELIANCE DEFENSE ALSO PRECLUDES PLAINTIFFS' CLAIMS AGAINST THE UNDERWRITER DEFENDANTS

In addition to the four grounds for dismissal noted above, the Complaint should also be

dismissed as against the Underwriter Defendants because they cannot be held responsible for the

alleged "misstatements" at issue.  The sole misrepresentation alleged in plaintiffs' Section 11 and

12(a)(2) claims is the allegation that the May 2008 offering materials incorporated by reference

Popular Inc.'s 2007 10K and its May 12, 2008 10Q, which purportedly treated certain tax assets

in a manner inconsistent with GAAP.  But Section 11(b)(3)(C) of the Securities Act expressly

provides that the Underwriter Defendants are entitled to rely on "any part of the" Offering

Documents "purporting to be made on authority of an expert" in conducting due diligence on the

accuracy of the offering materials, so long as the Underwriter Defendants "had no reasonable

ground to believe and did not believe, at the time such part of the registration statement became

effective, that the statements therein were untrue or that there was an omission to state a material

fact required to be stated therein not misleading." 15 U.S.C. § 77k(b)(3)(C).

Courts have consistently dismissed cases under Section 11(b)(3)(C), holding that

underwriters are entitled to reasonably rely on experts and, therefore, cannot be held liable for a

failure to detect and disclose misstatements contained in "expertised" portions of Offering

Documents, in the absence of "red flags." *See, e.g., In re Software Toolworks Inc.*, 50 F.3d 615,

623 (9th Cir. 1994); *In re Worlds of Wonder Secs. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994).[1]

---

[1] Decisions rejecting Section 11 claims based on a "reliance" defense lead courts to reject accompanying Section 12 claims as well, even though Section 12 does not contain a provision akin to Section 11(b)(3)(C). This is because the due diligence obligations imposed by Section 12 are less stringent than those imposed by Section 11. *See, e.g., In re*

Here, there can no doubt that the sole "misrepresentation" for which the Underwriter Defendants are allegedly responsible – the accounting treatment of Popular, Inc.'s deferred tax asset as reflected in its audited financial statement – falls squarely within the "expertised" portion of the Offering Materials. The Complaint itself acknowledges that the supposedly misleading audited financial statement was incorporated into the Offering Documents "under the caption 'Experts,'" (Compl. ¶ 290), and the Complaint dwells for more than ten pages on the technical intricacies of the GAAP provisions and how they purportedly were misapplied by Popular, Inc.'s accountants and auditors. (*Id.* ¶¶ 43-80).

Courts have not hesitated to dismiss Securities Act claims brought against underwriters in nearly identical circumstances. For example, a California federal district court recently granted a motion to dismiss certain claims predicated on the allegedly improper accounting treatment and valuation of mortgage loans held by Countrywide Financial Corporation. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1182 (C.D. Cal. 2008). According to the *Countrywide* court, it was clear on the face of the complaint that, *as a matter of law*, the underwriters were entitled to rely on the accounting decisions made by Countrywide's management and accountants with respect to certain of Countrywide's financial statements and thus that dismissal of claims based on those statements was appropriate. *Id.*

Similarly, the Ninth Circuit has held that a company's "*accounting decisions…represent precisely the type of 'certified' information on which [underwriters can] rely.*" *Worlds of Wonder*, 35 F.3d at 1421. It therefore would be "absurd" to require underwriters, who are not accountants, to detect and correct accounting errors in circumstances where company

---

*Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994) (granting summary judgment on claims under Sections 11 and 12 based on analysis of Section 11 due diligence defense); *In re WorldCom, Inc. Secs. Litig.*, 346 F. Supp. 2d 628 (S.D.N.Y. 2004) (explaining that due diligence obligations under Section 12 are "less demanding").

management and auditors have applied complex accounting rules to a company's financial statements. *Id.*; *accord Software Toolworks*, 50 F.3d at 624.

The same result should obtain here, where a complex accounting issue has been vetted by the company's expert auditors and the Complaint fails to identify a single "red flag" that could render unreasonable the Underwriter Defendants' reliance on the expert judgment of Popular, Inc.'s accountants and auditors. (*See* Compl. ¶¶ 299, 325, 335.) Accordingly, for this reason as well as those set forth in the Joint Memorandum and the PWC Memorandum, the claims against the Underwriter Defendants should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts Three and Four of the Complaint as against the Underwriter Defendants, with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**WHEREFORE**, the Underwriter Defendants hereby respectfully request this Honorable Court dismiss Counts Three and Four of Plaintiff's Consolidated Class Action Complaint as against the Underwriter Defendants.

**WE HEREBY CERTIFY** that today we electronically filed the document with the Clerk of Court using the CM/ECF system.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 11th day of January, 2010.

Herbert S. Washer (*pro hac vice* (pending))
Daniel C. Lewis (*pro hac vice* (pending))
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

*Attorneys for UBS Financial Services
Incorporated of Puerto Rico, Popular
Securities, Inc. and Citigroup Global
Markets, Inc.*

By: *s/Salvador J. Antonetti*
     *s/Ubaldo M. Fernández*
Salvador J. Antonetti (USDC No. 215002)
Ubaldo M. Fernández (USDC No. 224807)
O'Neill & Borges
American International Plaza
Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
Tel:     (787) 764-8181
Fax:     (787) 753-8944

*Local Counsel for UBS Financial Services
Incorporated of Puerto Rico, Popular
Securities, Inc. and Citigroup Global
Markets, Inc.*