UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

_____
                                                           )
RUSSELL HOFF, Individually and             )
on Behalf of All Others Similarly Situated,  )
                                                           )
            Plaintiff,                              )
                                                           )
     v.                                                  )
                                                           )
POPULAR INC., RICHARD CARRIÓN,    )
JORGE A. JUNQUERA, MANUEL         )
MORALES, FRANCISCO M. REXACH,   )  Civil Action No. 3:09-cv-01428-GAG
JUAN J. BERMÚDEZ, MARIA L.            )
FERRÉ, WILLIAM J. TEUBER, JOSÉ R. )
VIZCARRONDO, FREDERIC V.              )
SALERNO, MICHAEL J. MASIN,            )
PRICEWATERHOUSECOOPERS LLP,   )
UBS FINANCIAL SERVICES                   )
INCORPORATED OF PUERTO RICO,    )
POPULAR SECURITIES, INC., and         )
CITIGROUP GLOBAL MARKETS, INC., )
                                                           )
            Defendants.                          )
_____ )

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS**

Russell A. Del Toro                         Elizabeth V. Tanis
Roberto Santana Aparicio            John P. Brumbaugh
Del Toro & Santana                       King & Spalding LLP
Plaza Scotiabank, Suite 610         1180 Peachtree Street, N.E.
273 Ponce de León Avenue         Atlanta, Georgia 30309
San Juan, Puerto Rico 00917

Attorneys for Defendant PricewaterhouseCoopers LLP

**TABLE OF CONTENTS**

I.   PLAINTIFFS' SECTION 11 CLAIM AGAINST PWC IS TIME-BARRED. ...................... 1

II.  PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM AGAINST PWC. ........................ 6

    A.   Plaintiffs' Claim that the 2007 Financial Statements were Misstated is Implausible............................................................................................................ 6

    B.   The Complaint Fails To State A Claim Based Upon PwC's 2007 Audit Report ................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................................ 6-7, 10

*DeBruyne v. Equitable Life Assur. Soc. of the United States*,
   920 F.2d 457 (7th Cir. 1990) .................................................................................................2

*Dodds v. Cigna Securities, Inc.*,
   12 F.3d 346 (2d Cir. 1993) .....................................................................................................2

*In re Credit Suisse First Boston Corp.*,
   431 F.3d 36 (1st Cir. 2005) ............................................................................................. 9-10

*In re Polaroid Corporation Securities Litigation*,
   465 F. Supp. 2d 232 (S.D.N.Y. 2006) ................................................................................ 3-4

*In re Tyco Int'l, Ltd. Sec. Litig.*,
   185 F. Supp. 2d 102 (D.N.H. 2002) .................................................................................. 5-6

*In re Tyco Int'l, Ltd. Mulitdistrict Litig.*,
   2004 U.S. Dist. LEXIS 20733 (D.N.H. Oct. 14, 2004) ........................................................10

*Jorge v. Rumsfield*,
   404 F.3d 556 (1st Cir. 2005) .................................................................................................7

*LaChappelle v. Berkshire Life Ins. Co.*,
   142 F.3d 507 (1st Cir. 1998) .................................................................................................1

*Merck v. Reynolds*,
   2010 WL 1655827 (U.S. Apr. 27, 2010) ............................................................... 2, 5-6, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S. Ct. 2499 (2007) ...................................................................................7

*Young v. Lepone*,
   305 F.3d 1 (1st Cir. 2002) ................................................................................................1, 2

**STATUTES**

15 U.S.C. § 77k(a)(4) ...................................................................................................................8

15 U.S.C. § 77m .......................................................................................................................1, 6

Defendant PricewaterhouseCoopers LLP ("PwC") respectfully submits this reply memorandum of law in further support of its Motion to Dismiss the Consolidated Class Action Complaint.

## I.     PLAINTIFFS' SECTION 11 CLAIM AGAINST PWC IS TIME-BARRED.

The gist of Plaintiffs' argument for why the statute of limitations does not bar their Section 11 claim against PwC is that they did not know and could not have known that Popular's financial statements were misstated until January 2009, when Popular announced that it was recording a "full" valuation allowance against its U.S. mainland DTAs in the fourth quarter of 2008. Plaintiffs, they contend, "lacked the privileged access to information" (Opp. at 70) and could not have discovered the facts underlying their claim any earlier because "such facts were in the exclusive possession of the Defendants and unavailable to the investing public . . . ." (*Id.* at 71.) As shown below, Plaintiffs' argument is refuted by Plaintiffs' own Complaint.[1]

The parties agree that the relevant statute of limitations is "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . ." 15 U.S.C. § 77m. In the typical case, "storm warnings" suggesting the "possibility" of a misrepresentation trigger the plaintiff's duty to investigate, and the one-year period begins to run when the plaintiff thereafter would have discovered the "facts constituting the violation." *See, e.g., Young v. Lepone*, 305 F.3d 1, 8-9 (1st Cir. 2002). Unlike in *Young* and the other cases Plaintiffs rely upon, however, the Court here is not being called upon to determine whether the facts Plaintiffs knew really suggested the existence of a misstatement.

---

[1] Plaintiffs imply that this Court cannot decide a statute of limitations issue on a motion to dismiss (Opp. at 69), but the First Circuit holds that district courts can and should do so when, as is the case here, the defense is established by the complaint. *See LaChappelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) ("Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred.").

1

Here, Plaintiffs' Complaint itself acknowledges that the very same facts that Plaintiffs knew (either actually or constructively) as of May 8, 2008 are the basis of their claims that Popular's registration statement was materially misstated.[2]

As discussed at length in PwC's opening brief, Plaintiffs base their allegation that GAAP required Popular to record a full valuation allowance as of December 31, 2007 on (1) Popular's mainland U.S. operation's three-year cumulative loss as of the end of 2007 and (2) Popular's efforts to downsize those operations as of the end of 2007. (PwC Mem. at 10.) These facts were fully and publicly disclosed in Popular's SEC filings (including the registration statement itself) and other public statements even before Plaintiffs purchased their preferred stock. (PwC Mem. at 10-12.) Plaintiffs do not dispute that all of this information was publicly disclosed as of May 2008 and that Plaintiffs are thus charged with knowing it as of that date. *See* CC ¶ 322 (Plaintiffs "rel[ied] upon the statements in the Offering Documents"); *Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) ("The means of knowledge are the same thing in effect as knowledge itself." (internal quotations omitted)); *DeBruyne v. Equitable Life Assur. Soc. of the United States*, 920 F.2d 457, 466 n.18 (7th Cir. 1990) (plaintiff cannot avoid statute of limitations "by possessing, but failing to read, the documents that would put them on inquiry notice").

---

[2] Further, unlike *Young*, the claim against PwC is not for securities fraud under Section 10(b) of the Securities Exchange Act and thus does not include scienter as an essential element. As noted by Justice Scalia just last month in his concurring opinion in *Merck v. Reynolds*, No. 08-905, 2010 WL 1655827 (U.S. Apr. 27, 2010), and as echoed in the majority opinion as well (*id.* at *13), "[t]he elements of § 10(b) claims, which include scienter, are likely more difficult to discover than the elements of claims under § 77k [Section 11] or § 77*l* (a)(2), which do not [include scienter]. . . . *Determining when the plaintiff should have uncovered an untrue assertion in a registration statement or prospectus is much simpler than assessing when a plaintiff should have learned that the defendant deliberately misled him using a deceptive device covered by § 10(b).*" *Id.* at *17 (Scalia, J., concurring) (emphasis added).

Plaintiffs now try to dodge their own Complaint by arguing that there was some other "privileged" or "internal" information that they needed to have in order to "discover" their Section 11 claim that they did not have in May 2008. (Opp. at 70 (Plaintiffs "lacked privileged access to information"), *id.* (Plaintiffs were "not privy to the internal information upon which disclosure decisions are based"), *id.* at 71 (all facts that would have "justified commencing the Securities Act claims before January 22, 2009 . . . were in the exclusive possession of the Defendants and unavailable to the investing public").) Plaintiffs' argument, however, never articulates what "privileged" or "internal" information Plaintiffs supposedly needed but did not have in order to be on notice of their Section 11 claim. Further, the Complaint does not allege a single fact bearing on the Section 11 claim that was not known to the public, and thus chargeable to Plaintiffs, more than a year before Plaintiffs filed their Section 11 claim against PwC. (*See* PwC Mem. at 10-12.) Indeed (and constituting a major weakness), Plaintiffs' Complaint contains no allegations regarding how Popular actually went about making its decision that no valuation allowance was required and how PwC assessed that judgment. Plaintiffs' allegations are based only upon information in the registration statement itself.

The district court's decision in *In re Polaroid Corporation Securities Litigation*, 465 F. Supp. 2d 232 (S.D.N.Y. 2006), is directly on point. In *Polaroid*, the plaintiffs alleged that Polaroid Corporation's ("Polaroid") senior officers and accounting firm violated Section 10(b) by, among other things, causing Polaroid to fail to record a valuation allowance against its DTAs in 1999 and 2000 when Polaroid had significant cumulative losses and a history of being unable to utilize its DTAs. *Id.* at 236. The defendants argued that the plaintiffs were on notice of their claims by August 9, 2001, when KPMG, Polaroid's auditor, issued a going concern qualification, but the district court concluded that the plaintiffs were on notice of their claims even earlier

3

based upon Polaroid's financial statements showing its cumulative losses. As the district court put it, "[i]f the alleged fraud involves Polaroid's intentional ignorance of evidence [the cumulative losses] strongly suggestive of the need to take a valuation allowance . . ., plaintiffs were on notice of that fraud as soon as the relevant statements were published because that evidence was publicly available in the statements of recent past." *Id.* at 243. Because the plaintiffs were on notice more than one year before they filed suit, the district court held that the plaintiffs' claim was barred by the statute of limitations. *Id*. at 244.

This case presents highly analogous facts. Here, Popular's cumulative U.S. losses and efforts to downsize its U.S. operations -- the "evidence" that Plaintiffs contend required Popular to record a valuation allowance at 2007 year-end -- were of public record even before the preferred stock offering. Thus, as in *Polaroid*, once the offering was made pursuant to the supposedly misstated registration statement in May 2008, Plaintiffs were immediately on notice of their claims. Plaintiffs argue that there was additional information before the district court in *Polaroid* that led it to conclude that the plaintiffs were on notice of their claims earlier (Opp. at 71 n.34), but Plaintiffs have misread the opinion. While the *Polaroid* plaintiffs claimed that "the full truth" about Polaroid's financial condition was revealed through later disclosures, including KPMG's going concern qualification and Polaroid's subsequent bankruptcy (465 F. Supp. 2d at 241), the district court's conclusion that the statute of limitations began to run earlier was based solely upon the public information concerning Polaroid's losses. *Id.* at 243.

Plaintiffs' brief in opposition ignores other facts showing that Plaintiffs should have discovered their Section 11 claim more than one year before they filed it. First, Plaintiffs do not respond to PwC's observation (PwC Mem. at 13) that Plaintiffs' Complaint alleges that securities analyst Sterne Agree warned publicly that "Popular['s] U.S. mainland deferred tax assets were

4

likely overstated" (CC ¶ 128) on five different occasions between the May 2008 preferred stock offering and October 19, 2008, the date one year before Plaintiffs filed their Section 11 claim and thus the cut-off date for the Section 11 statute of limitations. Moreover, Plaintiffs themselves allege that Sterne Agee's warnings provided "notice" of problems with Popular's 2007 financial statements. (CC ¶ 127.)

Second, Plaintiffs do not respond to PwC's argument (PwC Mem. at 13) that Plaintiffs filed their initial complaint in this case, which asserted a scienter-based securities fraud claim under Section 10(b) of the Securities Exchange Act, within one year of the preferred stock offering, which demonstrates that Plaintiffs had the facts upon which their Section 11 claim is based but slept on their rights. Plaintiffs' initial complaint, just like their Consolidated Complaint that added PwC as a defendant, alleged that the DTAs were overstated because no valuation allowance was recorded. (*See* Dkt. 1, ¶¶ 35, 38, 39.) As Justice Scalia stated in his concurring opinion in *Merck*, quoted above at note 2, pleading a Section 10(b) claim is more difficult than pleading a Section 11 claim. Having managed to file a Section 10(b) claim within one year of the offering at issue, Plaintiffs could have even more easily filed their Section 11 claim as of that date. In *In re Tyco Int'l, Ltd. Sec. Litig.*, 185 F. Supp. 2d 102 (D.N.H. 2002), plaintiffs asserted Section 11 claims against Tyco International, Ltd. ("Tyco"), and others, alleging that a registration statement issued in connection with Tyco's acquisition of another company was misleading for failure to disclose accounting improprieties. Those improprieties were revealed in a securities analyst's report and newspaper article published in October 1999. *Id.* at 107-08 & 116. Shareholders filed 10b-5 claims in December 1999 but did not amend to add Section 11 claims until November 2000. The district court concluded that the Section 11 claim was barred because the plaintiffs had sufficient information to bring their claim by October

5

1999, more than a year before the plaintiffs amended to add the Section 11 claim. According to the district court, its conclusion was

> underscored by the fact that a number of plaintiffs were able, within a year of the appearance of these publications, to assert claims under the PSLRA-governed Exchange Act based on the same allegedly improper accounting scheme implicated by these claims. [The plaintiff group] has failed to offer any persuasive explanation for its alleged inability to assert its 1933 Act claims along with its Exchange Act claims. According, I dismiss the 1933 Act claims because they are barred by 15 U.S.C. § 77m.

*Id.* at 116. That is precisely the case here, and the Court should reach the same result.

\*   \*   \*

In summary, all of the "facts constituting the violation" were in the registration statement and thus known to Plaintiffs (actually or constructively) in May 2008. Because Plaintiffs had knowledge of the "facts constituting the violation," *Merck*, 2010 WL 1655827, at \*15, in May 2008, the statute of limitations began to run in May 2008 and expired in May 2009, five months before Plaintiffs amended their complaint to add the Section 11 claim against PwC. The defense is established by Plaintiffs' own allegations; accordingly, the Court should grant PwC's motion to dismiss with prejudice.[3]

## II.   PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM AGAINST PWC.

### A.   **Plaintiffs' Claim that the 2007 Financial Statements were Misstated is Implausible.**  The repeated theme of Plaintiffs' Opposition is that Defendants are improperly

---

[3] PwC's arguments that the Section 11 claim both fails to state a claim and is time-barred are not "inherently and fundamentally inconsistent" as Plaintiffs contend but rather are alternative arguments. (Opp. at 68.) For its statute of limitations argument, PwC does not challenge the sufficiency of Plaintiffs' allegations but rather points out that those allegations, regardless of whether they satisfy the *Iqbal* pleading test, still show on their face that Plaintiffs' Section 11 claim must be dismissed as time-barred. Alternatively, for the reasons stated in PwC's opening brief and in Popular's briefing on its motion to dismiss, the claim that the 2007 financial statements were misstated for failure to record a "full" U.S. valuation allowance is implausible based upon the facts Plaintiffs allege and the additional facts in the public record that the Court may and should consider on motions to dismiss.

6

arguing their version of the facts over Plaintiffs'. (*E.g.*, Opp. at 19, 24.) Not so -- Defendants have merely brought to the Court's attention undisputed facts that were either alleged by Plaintiffs or were established by the SEC filings upon which Plaintiffs' Complaint relies and that this Court can and should consider on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007); *Jorge v. Rumsfield*, 404 F.3d 556, 559 (1st Cir. 2005). Defendants are not challenging the existence of the facts alleged by Plaintiffs; rather, Defendants are challenging the inferences Plaintiffs ask the Court to draw from those facts. As set forth in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a court considering a motion to dismiss should "draw on its own judicial experience and common sense" to determine whether the well-pleaded facts present a "plausible" claim, that is, whether they "permit the court to infer more than the mere possibility of misconduct." 129 S. Ct. at 1950. Here, the inference that Popular violated GAAP by not recording in its 2007 financial statements a valuation allowance against its mainland U.S. DTAs is not plausible; therefore, the Section 11 claim must be dismissed.

The reasons why Plaintiffs' allegations do not show that Popular's 2007 financial statements violated GAAP and were thus misstated are set forth in Defendants' respective opening briefs and in the Popular Defendants' reply brief (at 3-7). Rather than repeating those arguments here, PwC adopts and incorporates them by reference and adds the following points:

1.  Unlike the Exchange Act claims against Popular and its senior officers, which challenge statements throughout the Class Period, the only statements at issue in the Section 11 claim are those in the registration statement issued in connection with the May 2008 preferred stock offering. Further, the only statements in the registration statement for which PwC may be liable are the 2007 financial statements themselves, which Plaintiffs claim PwC "certified," and

7

the 2007 Audit Report on those financial statements, which PwC "prepared." 15 U.S.C. § 77k(a)(4). The 2007 financial statements and the 2007 Audit Report were issued on February 29, 2008, shortly after the beginning of the Class Period, and none of the subsequent facts that Plaintiffs rely upon to show that Popular's accounting judgments continued to be unreasonable thereafter -- including Popular's worsening financial condition, BPNA's losses in 2008, Popular's "tax strategies", and Popular's alleged interest in selling its U.S. operations -- are relevant to the Section 11 claim. To the extent that Popular is attempting to use those subsequent facts as evidence that the accounting judgments were inappropriate as of the date of the 2007 year-end financial statements, Plaintiffs are alleging wrongdoing by hindsight, which Plaintiffs acknowledge is impermissible as a matter of law. (Opp. at 19.) The only facts relevant to determining whether Popular reasonably concluded that it was "more likely than not" to utilize the DTAs on its books as of the end of 2007 are facts that were available to Popular at that time.

2. Focusing on the facts available at the end of 2007, Popular had one mainland U.S. business, BPNA, that was and always had been highly profitable. It had two other U.S. businesses, E-LOAN and PFH, that were not profitable and, for that reason, were set to be downsized (E-LOAN) and discontinued (PFH). (PwC Mem. at 3-4.) Based upon BPNA's historical performance (pre-tax profits of $78.4 (2007), $162 million (2006), and $157 million (2005)),[4] and discontinued or downsized loss-producing businesses, it was entirely reasonable for Popular to have concluded that BPNA had been sufficiently profitable and would continue to remain so after the end of 2007. Given these undisputed facts -- which Plaintiffs pointedly ignore because they are inconvenient to Plaintiffs' theory of the case -- Plaintiffs have not

---

[4] (*See* 2007 10-K at Ex. 13.1 p. 26, Ex. 4.) PwC referred to "net" or post-tax profits in its opening brief for purposes of demonstrating that BPNA was historically profitable (*see* PwC Mem. at 19) but, for purposes of determining whether the amount of future income would be sufficient to utilize DTAs, pre-tax profit is the appropriate measure.

8

alleged a plausible claim that it was "unreasonable" at the end of 2007 for Popular to determine it did not need to record a valuation allowance against its mainland U.S. DTAs because those operations would generate sufficient future taxable income to utilize its mainland U.S. loss carryforwards and tax deductions. (CC ¶ 292; 2007 10-K at Ex. 13.1 pp. 16, 127-29, Ex. 4.)

3. The two examples from the PwC Guide of companies that appropriately decided not to record valuation allowances despite suffering cumulative losses are directly on point. (*See* PwC Mem. at 17-18.) In both examples, the companies retained historically profitable businesses (*i.e.*, BPNA) and shed unprofitable businesses (*i.e.*, PFH and E-LOAN) and thus predicted future taxable income based on the profitable businesses. (*Id.*)

Plaintiffs accuse PwC of oversimplifying this analysis, arguing that the issues are more complicated and fact-intensive that PwC's analysis suggests. (Opp. at 27.) In so arguing, however, Plaintiffs merely prove PwC's and the other Defendants' threshold point about DTAs, valuation allowances, and GAAP: Plaintiffs' theory that the mere existence of a three-year cumulative loss and the cessation of certain business operations demonstrate that Popular's 2007 year-end financial statements were materially misstated is not plausible.

**B.     The Complaint Fails To State A Claim Based Upon PwC's 2007 Audit Report.**  To the extent Plaintiffs claim the 2007 Audit Report was misstated because the 2007 financial statements were misstated, those claims fail for the reasons stated above.

Further, as to PwC's GAAP opinion, Plaintiffs claim that they were not required to plead "subjective falsity" as to PwC's audit opinion, as PwC argued (PwC Mem. at 22-23), and that PwC has misread the First Circuit's decision in *In re Credit Suisse First Boston Corp.*, 431 F.3d 36 (1st Cir. 2005). To the contrary, the *Credit Suisse* decision is quite clear: in order to plead that a statement of opinion is "false," the plaintiff must plead "facts sufficient to indicate that the

9

speaker did not actually hold the opinion expressed." *Id.* at 47. *Cf. Merck*, 2010 WL 1655827, at *13 (commenting that some statements are personal and currently known to the speaker and thus could be false only if the speaker knew of their falsity). The fact that *Credit Suisse* was a Section 10(b) case is irrelevant; falsity under Section 10(b) and falsity under Section 11 are identical inquiries. Because Plaintiffs fail to allege even conclusorily that PwC did not actually hold the opinion that Popular's 2007 financial statements were stated in all material respects in accordance with GAAP, Plaintiffs' claim regarding the audit opinion fails.

Finally, regarding Plaintiffs' conclusory allegations regarding PwC's compliance with auditing standards, Plaintiffs claim that their allegations are "more than adequate" based upon a single pre-*Iqbal* district court case. (Opp. at 74-75 (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, MDL Docket No. 02-1335-B, 2004 U.S. Dist. LEXIS 20733 (D.N.H. Oct. 14, 2004)).) *Iqbal*, however, makes clear that conclusory allegations must be stripped away, and only "well-pleaded" factual allegations should be vetted for "plausibility." 129 S. Ct. at 1949-50. Because Plaintiffs plead no facts whatsoever concerning PwC's audit work regarding Popular's DTAs, the Complaint contains no well-pleaded facts upon which to infer that PwC failed to comply with the applicable auditing standards.

*     *     *

For the foregoing reasons, as well as those set forth in its Opening Brief, PwC respectfully requests that the Court dismiss the Consolidated Complaint as to PwC with prejudice.

PwC HEREBY CERTIFIES that today it electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.

Respectfully submitted.

At San Juan, Puerto Rico, this 10th day of May, 2010.

**ATTORNEYS FOR:**
**PRICEWATERHOUSECOOPERS LLP**

**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel (404) 572-4600
Fax (404) 572-5100

**S/ELIZABETH V. TANIS**, admitted *pro hac vice*
E-mail: etanis@kslaw.com
**S/JOHN P. BRUMBAUGH**, admitted *pro hac vice*
E-mail: pbrumbaugh@kslaw.com

**DEL TORO & SANTANA**
Plaza Scotiabank, Suite 610
273 Ponce de León Avenue
San Juan, Puerto Rico 00917
Tel (787) 754-8700
Fax (787) 756-6677

**S/ RUSSELL A. DEL TORO**
USDC-PR 121302
E-mail: rdeltoro@dtslaw.com
**S/ ROBERTO SANTANA APARICIO**
USDC-PR 122811
E-mail: rsantana@dtslaw.com