### UNITED STATES DISTRICT COURT
### DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| RUSSELL HOFF, Individually and on Behalf of All Others Similarly Situated, | : : : | Civil Action No. 3:09-cv-01428-GAG |
| Plaintiff, | : : | |
| v. | : : | |
| POPULAR INC., et al. | : : | |
| Defendants. | : : : | |

### UNDERWRITER DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECURITIES ACT CLAIMS

Defendants UBS Financial Services Inc. of Puerto Rico, Popular Securities, Inc. and Citigroup Global Markets, Inc. (collectively, the "Underwriter Defendants") respectfully submit this Reply Memorandum in further support of their Motion to Dismiss (the "Underwriter Defendants' Motion") Counts Three and Four of the Consolidated Class Action Complaint (the "Complaint").[1]

### PRELIMINARY STATEMENT

The only claims against the Underwriter Defendants (Counts Three and Four) are predicated entirely on the single allegation that the Offering Documents for Popular, Inc.'s Series B Offering in May 2008 were misleading because they incorporated by reference Popular, Inc.'s financial statements, which allegedly accounted for a deferred tax asset in a manner inconsistent with Generally Accepted Accounting Principles ("GAAP").  (*See* Compl. ¶¶ 286-97.)

These claims should be dismissed against the Underwriter Defendants as they are time-barred, and derive from expertised portions of Popular, Inc.'s financial statements.  For these

---

[1] Unless otherwise defined herein, terms used are as defined in the Complaint and the Underwriter Defendants' Motion.

reasons, and numerous other reasons explained below and in reply papers submitted by Popular,

Inc. and the Individual Defendants (Dkt. No. 149) (the "Joint Reply") and

PricewaterhouseCoopers LLP (Dkt. No. 147) (the "PWC Reply"), which the Underwriter

Defendants incorporate and adopt, the claims against the Underwriter Defendants should be

dismissed without leave to amend.

**ARGUMENT**

**I.    PLAINTIFFS' CLAIMS AGAINST THE UNDERWRITER DEFENDANTS ARE
       TIME-BARRED**

As explained in Section II(D) of the Underwriter Defendants' Motion, the claims under

Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act") against the

Underwriter Defendants are barred by the applicable statute of limitations.  This one year period

begins to run "after the discovery of the untrue statement or the omission, or after such discovery

should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.

"Storm warnings" suggesting the "possibility" of a misrepresentation trigger a plaintiff's

duty of inquiry, and the one year period begins to run when the exercise of reasonable diligence

by an ordinary investor would have disclosed the alleged misstatement.[2]  *Young v. Lepone*, 305

F.3d 1, 8-9 (1st Cir. 2002); *see also In re Xchange Inc., Sec. Litig.*, No. Civ. A. 00-10322-RWZ,

2002 WL 1969661, at *2 (D. Mass. Aug. 26, 2002) ("Storm warnings . . . trigger a plaintiff's

duty to investigate . . . .").

---

[2] The Supreme Court's recent decision in *Merck & Co., Inc. v. Reynolds* approved of the "storm warnings" approach to the statute of limitations applied by the First Circuit in *Young.*  No. 08-905, 2010 WL 1655827, at *15 (U.S. Apr. 27, 2010) (U.S. April 27, 2010).  Moreover, in a concurring opinion in *Merck*, Justice Scalia confirmed that the statute of limitations applicable to claims under Sections 11 and 12(a)(2), unlike fraud-based claims, is triggered simply when a plaintiff knew or should have known of the alleged misstatement or omission in the registration statement. *Id.* at *17 (Scalia, J., concurring) ("[t]he elements of § 10(b) claims, which include scienter, are likely more difficult to discovery than the elements of claims under [Sections 11 and 12(a)(2)], which do not . . ..  Determining when the plaintiff should have uncovered an untrue assertion in a registration statement or prospectus is much simpler than assessing when a plaintiff should have learned that the defendant deliberately misled him using a deceptive device covered by § 10(b)").

2

As detailed in Section I of the PWC Reply, plaintiffs were on inquiry notice – if not actual notice – of Popular, Inc.'s alleged accounting misrepresentations as soon as the Offering Documents were filed in May 2008. This is because the Offering Documents and other earlier filed materials disclosed information about Popular, Inc.'s three-year cumulative losses and Popular, Inc.'s plans to downsize its U.S. operations. Plaintiffs do not deny that this information was fully disclosed. (*See* Opp. 70.) Rather, plaintiffs contend that this information was not sufficient to put them on inquiry notice because they were outsiders who did not have access to unspecified "internal information" about Popular, Inc.'s accounting practices. (*Id.*)

But plaintiffs themselves appear to argue elsewhere in their brief that additional information was not necessary, as they argue repeatedly that evidence of cumulative losses and downsized U.S. operations alone required Popular, Inc. to record a valuation allowance. (*See, e.g.,* Opp. 2, 21-23.) Moreover, other outsiders reached a contemporaneous conclusion that a valuation allowance might be required and disseminated that opinion repeatedly and publicly, thereby providing plaintiffs with ample additional notice of a potential issue. As the Complaint alleges, just weeks after the offering documents were filed in May 2008, an analyst at Stern Agee questioned Popular, Inc.'s accounting practices without the benefit of any supposed "internal information." (Compl. ¶ 128 (on June 13, 2008, Sterne Agee warned that the deferred tax assets "required either a 'substantial writedown' or to be 'written off in its entirety'").) Indeed, the Complaint alleges that the analyst at Stern Agee repeated this concern *five more times*, each time explaining the basis for the disagreement with Popular, Inc.'s accounting treatment. (Compl. ¶¶ 126, 128, 174, 243.) Plaintiffs argue that the Stern Agee published analyst reports were repeated warnings that should have alerted Popular, Inc. and its executives to the purported accounting

3

irregularities  (Opp. 40-41), but fail to explain why those very public warnings do not trigger the duty to investigate.

Plaintiffs ignore these analyst reports in their opposition brief even though both the Underwriter Defendants and PWC argued in their respective motions to dismiss that the analyst reports constituted storm warnings sufficient to trigger a duty of inquiry.  (Underwriter Def.'s Mot. 5-6; PWC Mem. 13; *see also In re Tyco Int'l, Ltd. Sec. Litig.*, 185 F. Supp. 2d 102, 116 (D.N.H. 2002) (dismissing claims on motion to dismiss because two public reports put plaintiffs on notice of allegedly improper accounting).)  Accordingly, the causes of action asserted against the Underwriter Defendants likely accrued in May 2008 when the Offering Documents were filed, but in any event accrued no later than June 13, 2008 when the Stern Agee analyst raised concerns.  The applicable statute of limitations therefore expired no later than June 13, 2009.

Because plaintiffs' claims against the Underwriter Defendants were not asserted until October 2009, they are untimely and should be dismissed.  Moreover, because plaintiffs do not attempt to explain why they did not pursue claims against the Underwriter Defendants when they filed their original complaint, the dismissal can and should be with prejudice.  *See Tyco Int'l*, 185 F. Supp. 2d at 116 (dismissing claims and closing case where plaintiff failed to explain why later claims based on information in plaintiffs' possession were not filed at time of earlier complaint).

## II.    THE UNDERWRITER DEFENDANTS REASONABLY RELIED ON THE DETERMINATIONS OF POPULAR, INC.'S ACCOUNTANTS AND AUDITORS

Section 11(b)(3)(c) of the Securities Act provides that underwriters may rely on an issuers' experts in connection with, and therefore cannot be held liable for, supposed misstatements contained in "expertised" portions of offering materials *unless* there are "red flags." *In re Software Toolworks Inc.*, 50 F.3d 615, 623 (9th Cir. 1994).  "Red flags" sufficient to overcome this presumption of reasonable reliance exist only in a circumstance that would

cause a layman to question the expert's determinations, such as the discovery of a backdated document. *In re Metropolitan Sec. Litig.*, No. CV-04-25-FVS, 2010 WL 424625, at *3 (E.D. Wash. Jan. 28, 2010) (citing *In re Software Toolworks*, 50 F.3d at 623).

Thus, although underwriters in certain circumstances may have an obligation to verify *some* information underlying an issuer's financial statements, they are not expected to substitute their judgment for that of the issuer's experts with regard to accounting issues. *Id.* ("An underwriter is not required to second guess an accountant's treatment of a [company's tax asset]. Nor is an underwriter required to perform complex analysis of a company's cash flow in order to evaluate an accountant's determinations.")

In light of Section 11(b)(3)(c), the Underwriter Defendants have argued that they did not have an obligation to analyze the propriety of the accounting treatment applied to the deferred tax asset, which was the responsibility of Popular, Inc.'s accountants and auditors.[3]  In response, Plaintiffs contend that the three years of cumulative losses at Popular, Inc. constituted a "red flag" sufficient to put the Underwriter Defendants on notice that "further investigation" into Popular, Inc.'s financial statements "was warranted" and that the Underwriter Defendants therefore could not rely reasonably on the determinations of Popular, Inc.'s accountants and auditors.[4]  (Opp. 66.)

---

[3]  Plaintiffs are mistaken when they argue that the Court cannot consider the Underwriter Defendants' reliance at the pleading stage because it is an affirmative defense. (Opp. 64.)  Where an underwriters' defense under Section 11(b)(3)(c) is apparent from the face of the Complaint, courts have not hesitated to dismiss claims under Sections 11 and 12(a)(2). *See, e.g., In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1182 (C.D. Cal. 2008) (dismissing claims because complaint made clear that as a matter of law, underwriters were entitled to rely on accounting decisions).

[4]  Plaintiffs also argue that even if the Underwriter Defendants' reliance on the audited financial statements contained in Popular, Inc.'s February 23, 2008 10K was reasonable, the Underwriter Defendants were not entitled to rely on Popular, Inc.'s first quarter financial statement contained in its May 12, 2008 10Q, which was incorporated by reference into the Offering Documents. (Opp. 67-68.)  This argument fails for three reasons. First, the case on which plaintiffs base the argument does not decide the issue of whether the defense applies equally to audited and unaudited financial statements; the court only notes that this was one of the arguments raised by the plaintiffs. *See In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 873–75 (S.D. Tex. 2004).

Plaintiffs' arguments on this point conclusively demonstrate why their claims are time-barred. If, as plaintiffs argue, the publicly announced information about Popular, Inc.'s cumulative losses was sufficient to put the Underwriter Defendants on notice that further investigation of Popular, Inc.'s accounting was warranted (Opp. 65-66), then that same information – particularly when supplemented by the repeated public warnings of an analyst beginning in June 2008 – necessarily constituted a "storm warning" sufficient to trigger plaintiffs' duty to investigate, and plaintiffs' claims are untimely.

Alternatively, if the Court were to accept plaintiffs' argument that Popular, Inc.'s cumulative losses do not constitute "storm warnings" for purposes of determining when the one-year statutory period began to run, then those losses cannot be found to constitute a "red flag" of the sort that might be sufficient to overturn the presumption that an underwriter may rely on the issuers' experts. The Underwriter Defendants are not required to possess or use accounting expertise in fulfilling their due diligence obligations and, accordingly, they should be afforded the presumption of reliance to which they are entitled. (Underwriter Def.'s Mot. 6-8.)

## III.  COUNTS THREE AND FOUR SHOULD BE DISMISSED AS AGAINST THE UNDERWRITER DEFENDANTS FOR THE REASONS SET FORTH IN THE JOINT REPLY AND THE PWC REPLY

Three additional arguments for dismissal of the claims against the Underwriter Defendants are set forth comprehensively in the Joint Reply and the PWC Reply. To avoid repetitive filings, we provide a very brief summary of those arguments below.

---

Second, whether contained in audited or unaudited financial statements, there is no question that the accounting treatment applied to the deferred tax asset results from an accountant's expert judgment. Underwriters are not required to second-guess these judgments. *Metropolitan Sec. Litig.*, 2010 WL 424625, at *3. Third, Plaintiffs offer no plausible explanation why the Underwriter Defendants may reasonably rely on accounting treatment applied by Popular, Inc.'s accountants and auditors in the 2007 10K, which issued on February 28, 2008, but could not rely on the identical treatment in unaudited financial statements issued less than three months later.

**A.      Plaintiffs Fail to Plead a Material Misstatement or Omission in the Offering Documents**

To state a claim under Section 11 or 12(a)(2) of the Securities Act, plaintiffs must demonstrate that the Offering Documents contained "an untrue statement of material fact" or omitted "to state a material fact" that would be necessary to make the statements not misleading. 15 U.S.C. §§ 77k, 77l(a)(2).  As explained in Sections I(A) and II of the Joint Reply and Section II(A) of the PWC Reply, plaintiffs' Complaint fails to plead particularized facts showing that any of the Offering Documents related to the Series B Offering were actually false or misleading. This provides an independent ground to dismiss the claims against the Underwriter Defendants.

**B.      The Alleged Misstatements Are Forward-Looking**

Under the Private Securities Litigation Reform Act (the "PSLRA"), forward-looking statements accompanied by cautionary language fall within the Securities Act safe-harbor provision unless the defendant has "actual knowledge . . . that the statement was false or misleading."  15 U.S.C. § 77z-2(c)(1)(B).  This protection is based on a broader common law protection under the "bespeaks caution" doctrine.  As explained in Sections I(D) and II of the Joint Reply, the alleged misstatements in the May 2008 Offering Documents qualify as "forward-looking" statements that were accompanied by sufficient cautionary language.  As such, they cannot form a basis for liability in this case and claims based on these alleged misstatements should be dismissed.

**C.      The Alleged Misstatements Did Not Cause Plaintiffs' Losses**

The claims against the Underwriter Defendants also must be dismissed because the Underwriter Defendants' loss causation defense is apparent from the face of the Complaint.  As discussed in Sections I(C) and II of the Joint Reply, the Series B shares did not suffer a price drop that was concurrent with the alleged revelation of fraud.

## CONCLUSION

For the foregoing reasons and those articulated in the original Memorandum of Law filed in support of the Underwriter Defendants' Motion, the Court should dismiss Counts Three and Four as against the Underwriter Defendants, with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**WHEREFORE**, the Underwriter Defendants hereby respectfully request this Honorable Court dismiss Counts Three and Four of Plaintiff's Consolidated Class Action Complaint as against the Underwriter Defendants.

**WE HEREBY CERTIFY** that today we electronically filed the document with the Clerk of Court using the CM/ECF system.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 10th day of May, 2010.

Herbert S. Washer (*pro hac vice*)
Daniel C. Lewis (*pro hac vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Inc. and Citigroup Global Markets, Inc.*

By: /s/Salvador J. Antonetti-Stutts
/s/Ubaldo M. Fernández-Barrera
Salvador J. Antonetti (USDC No. 215002)
Ubaldo M. Fernández (USDC No. 224807)
O'Neill & Borges
American International Plaza
Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944

*Local Counsel for UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Inc. and Citigroup Global Markets, Inc.*