UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| RUSSELL HOFF, Individually and on Behalf of All Others Similarly Situated, Plaintiff, | Civil Action No. 3:09-CV-01428-GAG (Consolidated) |
| vs. | CLASS ACTION |
| POPULAR INC., et al., Defendants. | |

**PLAINTIFFS' RESPONSE TO THE MOTION TO FILE SUPPLEMENTAL AUTHORITY OF DEFENDANT POPULAR, INC. AND THE INDIVIDUAL DEFENDANTS, AND CROSS MOTION TO FILE AS SUPPLEMENTAL AUTHORITY THE UNITED STATES SUPREME COURT'S OPINION IN *MERCK & CO. V. REYNOLDS*, AND CHIEF MAGISTRATE JUDGE ARENAS' DENIAL OF POPULAR'S MOTION TO DISMISS IN *WALSH V. POPULAR, INC.***

TO THE HONORABLE COURT:

NOW COME the Plaintiffs, through their undersigned counsel, and respectfully respond to the Motion of Defendant Popular, Inc. and the Individual Defendants to File Supplemental Authority in Support of their Motion to Dismiss. Although Defendants use their Motion to File Supplementary Authority to submit a clearly distinguishable case issued by a federal district court from another circuit, *Fait v. Regions Financial Corporation*, No. 09 Civ. 3161 (LAK) (S.D.N.Y. May 10, 2010), they have declined to meaningfully discuss two other, truly relevant decisions: the United States Supreme Court's April 27, 2010, decision in *Merck & Co. v. Reynolds*, No. 08-905 (U.S.), 2010 U.S. LEXIS 3671 (2010) (hereafter "*Merck*") (attached hereto as Exhibit A), and the Report and Recommendation of Chief United States Magistrate Judge Justo Arenas dated May 5, 2010, in the related action, *Walsh v. Popular, Inc.*, 09-1552 (ADC)(JA), pending against, among others, Defendant Popular, Inc. ("Popular") and Individual Defendants Juan J. Bermúdez, Richard L. Carrión, María L. Ferré, Michael J. Masin, Manuel Morales Jr., Francisco M. Rexach Jr., Frederic V. Salerno, William J. Teuber, Jr., José R.

Vizcarrondo, and Jorge Junquera, arising under the Employee Retirement Income Act ("ERISA") (attached hereto as Exhibit B).

*Merck*, *Walsh*, and the plainly distinguishable *Fait* are discussed below.

**A. *Merck & Co. v. Reynolds***

Plaintiffs respectfully submit that the Supreme Court's recent *Merck* decision demonstrates that Plaintiffs' claims are timely, and thus resolves the disputed statute of limitations issue raised by Defendants in their pending Motions To Dismiss (the "Motions").

In their Motions, Defendants argue that Plaintiffs' claims are untimely because Plaintiffs "failed to bring their Section 11 claims . . . 'within one year after the discovery of the untrue statement or the omissions, or after such discovery should have been made by the exercise of reasonable diligence'" PwC Mem. at 8.[1] According to Defendants, Plaintiffs should have discovered the fraud by December 31, 2007, when Popular's mainland U.S. operations were at a three-year cumulative loss (*id.* at 10), even though – according to Defendants – Plaintiffs are unable to plead sufficient facts of material misstatements or loss causation even today. In response, Plaintiffs' omnibus opposition brief argues that their claims against Defendants are timely because the statute of limitations period did not begin to run until, at a minimum, January 22, 2009, when Plaintiffs discovered facts from the Company's disclosures sufficient to adequately plead materially false and misleading statements and loss causation. *See* Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss (the "Omnibus Memorandum") at 68-71. Specifically, it was not until January 22, 2009 that Popular investors learned that the Company would record a full valuation allowance on its U.S. mainland tax deferred assets, thereby causing a precipitous drop in Popular's stock price. By contrast, under

[1] *See also* Pop. Mem. at 32-33; PwC Mem. at 8-14; Pop. Reply Mem. at 24; PwC Reply Mem. at 1-6; Und. Reply Mem. at 2-4.

Defendants' arguments, Popular investors were on inquiry notice concerning the misstatements at the ***same*** time the securities were publicly offered to investors and the Company and PwC stood by Popular's misstated deferred tax assets. That would be an absurd and unfair result.

The Supreme Court's unanimous, 9-0 *Merck* decision resolves this statute of limitations issue in Plaintiffs' favor. In *Merck,* the Court stated: "we reject 'inquiry notice' as the standard" for determining when the limitations period for §10(b) claims is triggered. *Merck*, 2010 U.S. LEXIS 3671, at *32. Instead, the Court held that, under the "discovery rule," the "limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered the '***facts constituting the violation***' . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Id. at* *34 (emphasis added).[2] In so holding, the Court emphasized that it would "frustrate the very purpose of the discovery rule" to allow the limitations period to run before a plaintiff could have discovered sufficient facts to adequately plead their claims. *Id.* at *27. *See also id.* at *33 (rejecting argument that the determination of when a reasonable investor would have "discovered the necessary facts" is somehow "too complicated" for lower courts to perform in those cases where a defendant contends that plaintiffs should have discovered their fraud earlier).[3]

Furthermore, consistent with well-established case law, the Supreme Court confirmed that it is ***defendant's*** burden – not plaintiff's – to establish on a motion to dismiss that a reasonably diligent plaintiff would in fact have discovered "the facts constituting the [defendant's] violation." *Id.* at *36. *See also In re TyCom Ltd. Sec. Litig.*, 03-cv-1352, 2005

[2] *See also id.* at 31 ("[T]he statute says that the plaintiff's claim accrues only after the 'discovery' of [the other 'facts constituting the violation.']. Nothing in the text [of 28 U.S.C. §1658(b)] suggests that the limitations period can sometimes begin ***before*** 'discovery' can take place.") (emphasis in original).

[3] *See also* concurring opinion of Scalia, J., at 38 (noting that in ordinary usage "discovery" occurs when one actually learns something new, and citing Webster's definition of "discovery" as "finding out or ascertaining something previously unknown or unrecognized").

U.S. Dist. LEXIS 19154, at *65 (D.N.H. Sept. 2, 2005); *Ballard v. Tyco Int'l, Ltd.*, 02-md-1335, 2005 U.S. Dist. LEXIS 14523, at *29 (D.N.H. July 11, 2005).

Defendants here have made no such showing. To the contrary – like the defendant in *Merck* – Defendants continue to ***deny*** that the Company's January 22, 2009 and February 19, 2009 announcements demonstrate that their previous statements regarding the Company's deferred tax assets were misstated at the time of the offering or that the subsequent drop in stock price was caused by disclosure of fraud.

In their reply briefs, Defendants cite to the concurring opinion in *Merck* for the unremarkable proposition that claims under the Securities Act do not require scienter. *See*, *e.g.*, PwC Reply Mem. at 2. As detailed herein, and in Plaintiffs' opposition to the motions to dismiss, Defendants have not established that a reasonable investor discovered, or should have discovered, the untrue statements or omissions in the offering documents at the very ***same*** time these securities were first offered to investors.

*Merck* held that the statute of limitations does not begin to run until a plaintiff has discovered "at least … sufficient facts … to be able to file a §10(b) complaint that satisfies the applicable heightened pleading standards." *Id.* at *33. As applied to Section 11 claims, *Merck* suggests that the limitations period does not run until a reasonable plaintiff has sufficient facts to file a sustainable complaint. Here, as Plaintiffs previously established, a reasonably diligent investor could not have discovered their claims – *i.e.*, the untrue statement and omissions in the offering documents – until, at the earliest, January 22, 2009, when the Company announced that it had to take a full valuation allowance on its U.S. mainland tax deferred assets. *Merck* does not change these facts. Plaintiffs here had no claim to file on the ***same*** date of the offering for numerous reasons, including a lack of a write-down of the deferred tax assets and no damages.

At best, Defendants have created a factual issue not appropriate for determination on a motion to dismiss. *See*, *e.g.*, *In re TyCom*, 2005 U.S. Dist. LEXIS 19154, at *65 ("Because the multifaceted question of whether storm warnings were apparent involves issues of fact, and the circumstances of each case must be explored independently, in certain cases it may not be appropriate to resolve this issue on a motion to dismiss.") (internal quotation marks omitted); *Young v. Lepone*, 305 F.3d 1, 9 (1st Cir. 2002) ("[I]n the archetypical case . . . it is for the factfinder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice.").

**B. *Walsh v. Popular***

The recent decision issued by Chief United States Magistrate Judge Arenas in *Walsh v. Popular, Inc.*, 09-1552 (ADC)(JA) (the "ERISA Opinion") further supports that Plaintiffs have adequately alleged both false and misleading statements and scienter against Defendants Popular, Carrión, and Junquera. Specifically, applying *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), Chief Magistrate Judge Arenas rejected in most respects Defendants Popular, Carrión, and Junquera's motion to dismiss the ERISA action pending against them. In fact, Chief Magistrate Judge Arenas held that Defendants Popular, Carrión, and Junquera failed to disclose all material facts regarding Popular. To wit:

> [D]efendants issued inaccurate financial statements that were materially misstated and presented in accordance with [GAAP] by improperly accounting [approximately] $700 million [in] deferred taxes. . . . [D]efendants knew or should have known that: (1) the economy [in] Puerto Rico was expected to continue to deteriorate, resulting in asset impairments and writeoffs, and that the losses experienced by [Popular's operations in the U.S.] were projected to continue; and (2) the dramatically spiraling increases in loan defaults would materially and adversely affect the credit quality of Popular's loan portfolios and would cause Popular to suffer significant loan losses, and the write-off of hundreds of millions of dollars of assets, . . . thereby making the Plans' investment in Popular stock imprudent.

***

> [B]y issuing a series of 10-K, 10-Q and 8-K forms during the Class Period, the defendants acknowledged the deteriorating financial economies in both the U.S. and Puerto Rico and the expectation of continued adverse repercussions to [Popular's] business and financial results. Plaintiffs also claim that the defendants published Investor Presentations in which they acknowledged that they expected the severe adversities to continue in the future.
>
> ***
>
> Based on these allegations, plaintiffs have pled sufficient facts to establish a claim for breach of fiduciary duty against the defendants [and] Popular. . . .

Ex. B at 34-37 (internal citations omitted).

Chief Magistrate Judge Arenas also held that the ERISA plaintiffs adequately pleaded Defendants Popular, Carrión, and Junquera's knowledge of the fraud:

> Popular, through its officers and employees, [knew that it] was unable to meet its business goals, engaged in highly risky and inappropriate business practices, ***withheld material information from the market***, and profited from such practices. . . . Because [the] defendants knew of [Popular's] failures and inappropriate business practices, they also knew that [they] were breaching their duties by continuing to maintain Plan investments in [Popular stock].

*Id.* at 43 (internal citations omitted and emphasis added). Notably, Chief Magistrate Judge Arenas cited many of the same facts alleged in the Consolidated Class Action Complaint here (the "Complaint") in support of this conclusion. *See*, *e.g.*, *id.* at 34-37, 43-44.

Accordingly, the ERISA Opinion demonstrates that Lead Plaintiffs have adequately alleged both false and misleading statements and Defendants Popular, Carrión, and Junquera's scienter.

### C. *Fait v. Regions Financial Corp.*

*Fait v. Regions Financial Corp.*, No. 09 Civ. 3161 (LAK) (S.D.N.Y. May 10, 2010), the new authority Defendants have submitted, is easily distinguishable. *Fait* does not address deferred tax assets ("DTAs") or the need to record valuation allowances, the issues before this Court. Rather, the plaintiffs in *Fait* alleged that a registration statement

and prospectus were false and misleading because they incorporated financial statements that overstated goodwill and underestimated loan loss reserves. *Fait*, slip op. at 2.[4] Specifically, according to the court: "Plaintiff asserts that [defendant] Regions' 2007 Form 10-K, which the Offering Documents incorporated by reference, overstated goodwill in connection with Regions' 2006 acquisition of AmSouth and understated the unexpected losses in Region's loan portfolio." *Id.* at 8. Defendant Region, a bank holding company, had acquired AmSouth, another bank holding company, in November 2006. *Id.* at 3-4.

In *Fait*, the court defined goodwill to be the "excess of the acquisition price [of AmSouth], an objective fact, over the fair value of AmSouth's assets at the time of the acquisition." *Id.* at 10. Any calculation of goodwill depended, therefore, on an ability to determine the fair value of AmSouth's assets. Finding that the plaintiffs had not presented any "objective standard" for establishing that value, the Court concluded that any representation by the defendants of a value for goodwill did not represent a statement of fact, but rather a statement of judgment or opinion:

> The fair value of those assets, the majority of which consisted of the value of AmSouth's loan portfolio, however, was not a matter of objective fact. Those assets were not traded on the New York Stock Exchange or some other efficient market where the fair market value typically is the price at which a share or other asset is trading at any given moment. ***Nor has plaintiff pointed to any other objective standard of value. Rather, the value of such assets is a matter of judgment and opinion***.

*Id.* at 10-11 (emphasis added).

Based on this conclusion – that there was no objective basis for determining whether the defendants had overstated goodwill – the court reasoned that the defendants'

---

4 Defendants submitted the *Fait* slip opinion with their Motion to File Supplementary Authority.

statement of goodwill could be actionable ***only*** if "the financial statement in the 10-K did not reflect management's 'honest opinion.'" *Id.* at 11. In other words, even though the defendants in *Fait* had asserted claims only under the Securities Act of 1933 (the "Securities Act") – which does not require a showing of scienter – the court found that there could be no liability absent a showing of a knowing or reckless misstatement of goodwill. *Id.* Observing that the defendants had "specifically disclaim[ed] any such allegation" (*id.*), the court dismissed the complaint.[5]

This case is distinguishable from *Fait* in two fundamental ways. ***First***, unlike the plaintiffs in *Fait*, which did not point to any "objective standard of value," Plaintiffs here have established such a standard for recording a valuation allowance to offset DTAs. Plaintiffs allege in great detail the requirements of Generally Accepted Accounting Principles ("GAAP"), and in particular SFAS No. 109 ("SFAS 109"), relating to the recognition of DTAs and valuation allowances. *See* Complaint ¶¶43-59.[6] Plaintiffs also allege in detail the way in which Popular's failure to record a valuation allowance against its mainland U.S. DTAs violated GAAP. *See*, *e.g.*, ¶¶60-128; *see also* Omnibus Mem. at 5-18.

Furthermore, as Plaintiffs demonstrated in their Omnibus Memorandum, the fact that Defendants had to exercise a degree of judgment in applying SFAS 109 does not excuse it from liability. The United States Supreme Court has observed that "GAAP

---

[5] The court used exactly the same reasoning to dismiss those claims based on a misstatement of loan loss reserves. The court found that "[l]oan loss reserves . . . reflect management's opinion as to the likelihood of future loan losses and their magnitude" (*Fait*, slip op. at 14), that "[w]hether Regions had adequate reserves for its predicted loan losses is not a matter of objective fact" (*id.*), and that the complaint was "devoid of any allegation that defendants did not truly hold those opinions at the time they were made public." *Id.* at 15.

[6] As discussed in the Complaint, Popular's own auditors set forth standards Popular was supposed to apply. *See*, *e.g.*, ¶¶54, 57, 132, 310-12.

tolerate[s] a range of reasonable treatments" (*Thor Power Tool Co. v. C. I. R.*, 439 U.S. 522, 544 (1979)), but Defendants are not free to choose a treatment outside that range, which is what Plaintiffs allege. Many cases, including at least one case within this Circuit, have rejected the argument that a securities case must be dismissed because the defendant was merely exercising its judgment. In *In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 148 (D. Mass. 2001), the court wrote:

> ***The fact that the application of GAAP tolerates a range of reasonable treatments does not, however, vindicate the defendants so easily***. There are indeed numerous occasions for judgment calls in the application of GAAP. But ***GAAP are intended to provide a reliable degree of predictability, and an application of GAAP that strays beyond the boundaries of reasonableness will provide evidence from which scienter can be inferred***. The First Circuit, although noting the malleability of GAAP, did not hesitate to hold that "[v]iolations of GAAP standards . . . could provide evidence of scienter." *Greebel*, 194 F.3d at 203.

[Emphasis added]; *see also Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 370 F.3d 645, 666 (8th Cir. 2001) ("Undoubtedly, the accounting issues are complex; whether they were handled within the parameters of good faith decision-making or whether the decisions amounted to recklessness will surely be the focus of any trial of this case."); *Selbst v. McDonald's Corp.*, No. 04 C 2422, 2005 WL 2319936, at *13 (N.D. Ill. Sept. 21, 2005) (holding, on a motion to dismiss: "given the complex and ambiguous nature of the above accounting standards, at this stage in the case, it would be improper for the Court to determine that the costs for the Innovate Project were properly accounted for in McDonald's financial statements.").

Ultimately, whether Defendants' actions – such as disregarding Popular US's cumulative three-year loss (*see*, *e.g.*, ¶¶70-79) – were "reasonable" will be an issue for a jury to decide. For purposes of Defendants' motions to dismiss, however, Plaintiffs have alleged facts demonstrating that Defendants' actions were unreasonable, and those fact

must be accepted as true. *See Tellabs, Inc. v. Makor Issues 7 Rights, Ltd.*, 551 U.S. 308, 322 (2007).

***Second***, even if the Court were to conclude that Plaintiffs have to establish a knowing or reckless misrepresentation or omission to state a claim even under the Securities Act (as opposed to the Securities Exchange Act of 1934, which requires allegations of scienter), Plaintiffs have done so. The Complaint has many, detailed allegations of scienter (*see*, *e.g.*, ¶¶230-43), which are discussed and summarized in Plaintiffs' Omnibus Memorandum. *See* Omnibus Mem. at 35-45. These allegations would easily satisfy the requirements of Judge Kaplan and the courts on which he relied in deciding *Fait*. *See Fait*, slip op. at 15 n.55.[7] In this connection, and as discussed in greater detail above, it is especially relevant that Chief Magistrate Judge Arenas concluded that the plaintiffs in the related ERISA action adequately pleaded knowledge of the fraud by Defendants Popular, Carrión, and Junquera.

**D. Conclusion**

WHEREFORE, Plaintiffs respectfully respond to Defendants' submission of *Fait*, and submit a cross-motion to this Honorable Court about the highly relevant United States Supreme Court's recent decision in *Merck,* which supports the timeliness of Plaintiffs' claims, and the recent ERISA Opinion in *Popular*, which supports Plaintiffs'

[7] For example, Judge Kaplan cited *In re CIT Group, Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004), which held that the statements in question could be actionable "if it is alleged that defendants did not actually believe that loan loss reserves were adequate, or if defendants had no reasonable factual basis for their belief." Similarly, Judge Kaplan cited *Hinerfield v. United Auto Group*, No. 97 Civ. 3533 (RPP), 1998 WL 397852, at *7 (S.D.N.Y. July 15, 1998), which held that the Securities Act claims failed because the plaintiffs allegations were conclusory and failed to "support an inference that [the defendants'] failure was the result of anything but inaccurate forecasting or unforeseen circumstances." Here, by contrast, Plaintiffs' detailed allegations would satisfy the requirements of the *CIT* and *Hinerfield* courts, as well as the requirements of the other courts on which Judge Kaplan relied.

allegations that Defendants issued false and misleading statements and acted with scienter.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this 17th day of May, 2010.

THE LAW OFFICES OF ANDRÉS W. LÓPEZ, P.S.C.
ANDRÉS W. LÓPEZ (USDC NO. 215311)

s/ Andrés W. López
ANDRÉS W. LÓPEZ
207 Del Parque Street, Third Floor
San Juan, PR 00912
Telephone: 787/641-4541
787/641-4544 (fax)

*Liaison Counsel*

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
SALVATORE J. GRAZIANO
LAURA H. GUNDERSHEIM
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: 212/554-1400
212/554-1444 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
MARK T. MILLKEY
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Co-Lead Counsel for Plaintiffs*